May it please the Court, my name is Mark Kogan. I'm here on behalf of Excel Realty Partners and New Plan Realty Trust. I'd respectfully reserve four minutes for rebuttal. Your Honor, this is a long history case. It began with a ground lease for the construction of a restaurant and that restaurant contained an exclusive right clause and a bunch of other clauses which I'll deal with as the issues come up. Historically, the plaintiff proceeded in breach of contract. The jury found the exclusive was violated in a material way and that the plaintiff was due damages. Thereafter, the plaintiff elected away from the jury verdict and proceeded in rescission. In the rescission case, the district court believed that the language of the lease need not be considered to determine whether or not rescission was allowable because the jury had found a material breach. In addition, the court found that what it opined indicted to be a waiver of the right to rescind in the lease would not be enforceable on the grounds of a judicial estoppel. Eventually, the district judge allowed rescission, entered an order of judgment, and both sides appealed. Both sides raised a series of issues in what I'll call Flagship One before this Court, many of which are also revived in this current appeal. But for purposes of today's argument, Flagship One really focused on our contention that the district court erred when it declined to consider whether the lease language permitted rescission in the first place and whether the court was correct in judicially estopping the defendants from asserting the waiver of jury status. In the case of Flagship One, the district court found that the district court had a duty, as it put it in the first instance, to decide whether the lease, taken in its entirety, allowed for rescission and then to decide whether the limitation on the remedy would be enforced under California law. On remand, the district court determined only that the exclusive was, as he put it, integral to the lease. And because it was integral, it became a, quote, dependent covenant. The court also looked at the extensive clause outlining the plaintiff's obligations under the lease and found that while that language expressly provided that all of the plaintiff's obligations were separate and independent covenants, that that language was not binding on the court because that provision of the lease did not address whether the landlord's obligations were likewise independent covenants. The court then turned to the language of the exclusive, the district court, excuse me, and examined it, but did not detect in its reasoning that that clause contained many conditions, but all of the conditions and dependencies of that clause ran in favor of the landlord, not in favor of the tenant. We think that the analysis was erroneous. Under California law, a lease can be rescinded only if the rescinding party or the party seeking rescission demonstrates that his or her performance is dependent upon the performance of the other party, which the Supreme Court of California has referred to as a condition precedent and has referenced that as a peculiar condition. So the question that the district court needed to analyze in the first instance was whether a clause that identified the tenant's or the plaintiff's obligations as separate and independent that further went on to say that none of the tenant's obligations would be abated or reduced in any manner based upon an interference with use or any other occurrence whatsoever could be properly held to be dependent on a clause later in the lease which contains no reference to any condition on behalf of the tenant. Now, I would point out that the formulation used in the district court, which is that it acknowledged that the breach of an independent covenant will never justify a rescission, I think was intending to say that the breach of a covenant which does not become a condition precedent to the other party's performance would never justify rescission. And that, I think, is the clear law in California. In addition, that clause goes on to waive, to the fullest extent that the law allows, any right to surrender or quit the premises. We've demonstrated that California cases considering clauses which impose a continuing obligation to perform on a party result in a waiver of rescission. Initially, as I mentioned, by initially I mean when the court first considered this prior to Flagship 1, the court looked at the cases we cited and referenced them as comparable to this case in force and effect, but then later held we were judicially estopped. On remand, the district court reconsidered that language in the lease and found that it wasn't a limitation on the remedy after all. We think that analysis is flawed. We think that the waiver of rescission is clearly enforceable in California and arises even more strongly in this case than it did in the cases that we relied on and cited for that proposition. And where's the waiver of rescission? Is that 4.5? In 4.5, yes. Okay. Where's the language in 4.5 that tells us that we've rescinded the waiver? I'm sorry. We've waived the rescission. It is the last sentence of it. It's our position that if you can't quit or surrender a premises, by definition, you can't rescind it. And that in conjunction with the continuing obligation to perform under the cases that the California cases that have considered waiver of rescission is sufficient to hold as a matter of law that no rescission will obtain. Wouldn't you agree that termination looks forward and rescission looks both backward and forward? Yes. We do not contend that termination and rescission are synonymous, although every rescission results in a termination of the lease. But there is no case that has required that the word rescission be specifically enumerated in a waiver for the waiver to be effective. Right. But not one of those words really encompasses rescission. Termination? Termination is a much broader term. Yes. And suggests that what you're doing is really terminating a lease that remains in effect, that is, it remains in existence. Rescission suggests that the lease never existed in the first place. Yes. We recognize that. Like voiding the lease. And termination is not the same. Termination doesn't do anything to suggest that the lease is void. Right. We recognize that. And we think that the California cases that focus on this sort of clause as being a waiver of rescission focus more directly on the continuing duty to perform in the face of any occurrence or breach, which is what we think is at issue here. Well, are you saying 4.5 contains language of a continuing duty to perform? Yes. And where is that? Is that different from the last sentence? It's the language that says, that starts the clause that recites that the, if I may, it's on page 9 of our brief, is that the result of the lease shall yield all of the rent with no set-off, cabinet claim, deduction, or any kind throughout the term. So that's the net to the landlord. Yes. That's the outcome of the duty, the independent, separate and independent duties of the tenant. Yeah. But the purpose of the triple net lease, as I understand it, was to sort of allocate risk on insurance and taxes and things like that. This is going to be net to the landlord. Yes. And that would suggest then you're going to yield all of the rent. But it doesn't suggest that you're going to yield all of the rent even in the face of rescission. That is, that there's been a material breach that will allow a party to say, okay, I think the lease is gone. It's not the way we thought it was going to happen, but we're done. Well, I think that that's at odds with the California cases that require that in order for a lease to be rescinded, one needs to demonstrate a condition precedent to excuse that did not occur to excuse the performance. We think that's the seminal question in this analysis and one that we believe the district court in its consideration, to the extent it analyzed, it was erroneous. I'd like to move on, if I may, because I see the clock is ticking on this. We urged initially that the court's handling of consequential damages in the rescission phase was erroneous and violated the Seventh Amendment and the strictures of similar in Chauffeurs that we've discussed at length in the brief. Initially, again, prior to Flagship 1, the district court considered and specifically held that the failure of the plaintiff to submit consequential damages of a recessory nature to the jury was the plaintiff's responsibility alone and that such damages would not be reserved for future consideration. During the rescission phase of the proceedings, the district court reconsidered that on the ground that under the California rescission statute, both consequential damages and restitution damages were permitted. We argued that the Federal jury right supersedes the fact that the California statute allows for this. And we have set forth our view on that such that we believe that the enumerated items of damages that we set forth in the papers were plainly consequential damages, and those damages could not be awarded by the court. In addition, the court declined to accept or consider any evidence in rescission, and the judge's approach to rescission was to go back to the breach of contract record and, in our view, we respectfully submit sort of cobbled together from a cost standpoint what would be rescission. This was a lease from 1999 and which was held and rent paid through 2003. We didn't get the right to have the premises back until 2005. The result in the rescission was to require that we purchase at cost the building, the equipment, pay for the inventory, the training of the employees, and virtually everything that went into the building. The district judge, in considering the equitable adjustment for the plaintiff's retention of the premises under the terms of an agreement with its lender that it benefited mightily from, said that it was prima facie evidence as to the value of the rent credit that the ground lease for the unimproved property be the standard. So that we ended up in what we believe to be a geological circumstance of having to buy the premises and stock it and expend every dime necessary to begin the business. And then the plaintiff would have no responsibility for its use, the fact that the equipment was used and used up, and that that measure of damages, and this is not a fraud case, going to cost and not taking evidence about value we think was error. We think that there was no basis in the law for the manner in which the Court managed the rescission side of this case. Counsel, you may use your time anytime you wish, but I do wish to remind you, you have three and a half minutes left. That is not only your reply for any arguments to this, but it's also your reply to Flagship's own arguments. I know. I'm mindful of that, Your Honor. Thank you. Well, I'd like to begin with a response point as to prejudgment interest and the assertion of the plaintiff that under a recent case called Tenzera, it would be appropriate or it was inappropriate for the district court not to relate back to 2006 for prejudgment interest purposes on the ground that that became a some certain, and they rely on Tenzera for that, which was a case in which the party involved didn't challenge the damages at all. But, frankly, I overlooked a nuance in California law, and I regret that, and I'd like to just put it out now, which is that Tenzera relied exclusively on a peculiarity of California law, a statute that provides that an award of arbitration is tantamount to a written contract between the parties for a fixed liability. And on that basis, the Court found that a party that never challenged damages in the first place owed that liquidated amount and relation back of prejudgment interest was appropriate. That's altogether inapposite to this case. And I wish I had made that point better in the briefing. The plaintiff has asked for not only accrued but unpaid interest, and the plaintiff has asked for unpaid interest, interest that they simply accrued on the books but never proved that they paid, but they want prejudgment interest on a book entry. We think that's entirely inappropriate, and there's no basis in the law for that, although I suppose it's good work if you can get it. But I don't think that that can be sustained under any circumstances. Actually, that actually concludes my response points, and I have a few sentences left. You have a little less than a minute remaining. I'm satisfied to sit down and come back on rebuttal, please. Okay. Well, you have a half a minute for your rebuttal. I thought I reserved. Counsel, I told everybody at the outset that that was your total time, and I just told you four minutes ago that that was your time and that you could use it any way you want, but this was the time for your rebuttal as well. All right. Thank you. Good morning, Your Honors. May it please the Court. John Fairbrook for Flagship West, LLC, and Marvin and Kathleen Rich. First, I'd like to address the Court's determination as to whether Section 4.5 bars rescission. I think the Court correctly concluded that there is absolutely no language within Section 4.5 that mentions rescission or even deals with the concept of rescission. As Your Honors pointed out in questions to counsel in his opening remarks, the triple net provisions are designed for different reasons other than a limitation of remedy. They have particular application in a landlord's unlawful detainer action and in those types of issues. But the words to quit, to surrender, or to terminate are not synonymous with rescission and exist in a completely different application. In fact, they exist in the context of an existing valid lease, not in the context of a rescinded lease in which all of the provisions are rescinded ab initio. The Court's determination regarding the significance of the jury finding, I think, is slightly misstated by counsel. The Court did find significant the jury finding of materiality, and I would note that that has not been placed in issue. No one is contesting that the jury instruction was wrong or that the jury's finding was not based on substantial evidence or anything else in that fashion. So the jury finding of materiality was, in fact, a valid finding based upon the evidence produced in the case. That was the time, I would submit, that the defendants had to argue that this was an independent obligation and not one which would justify decision. The instructions on materiality were specifically designed to test rescission. In fact, in the jury instruction conference, I personally pointed out, as a judge, what about a rescission claim, and then there was a dialogue, well, the materiality question should satisfy that, and I looked at that and I agreed that it would. I'd like to move briefly to the jury trial question that counsel raised, because I think it's really a bit of a red herring. And I'm going to start with a problem that occurred after the verdict was in in the trial. This case was submitted to the jury on a special verdict form under 49A, and it said special verdict form and it included a variety of questions, one of which was the breach material. Now, that is the essence of a special verdict. That question was the breach material. It's a factual finding by a jury. The judge would then take that factual finding, apply the law, and determine that rescission would be appropriate, and that's, in fact, what happened. But the problem occurred on the jury trial was after the verdict was in, and after I said to the Court that we had to consider our election of remedies and were inclined to take rescission, the Court reclassified the verdict form and said, no, it's really – well, it's kind of a special verdict, he said, it has aspects of it, but he said it's really a general verdict. And that then implicated 49B and the requirement that the plaintiff present all tribal issues to the jury. I believe that's horribly unfair and it's not the law. In fact, the case that we have cited, the Floyd case, says that exactly, that these rules are not traps for the unwary litigant, I being one of them. And when you title something a special verdict, and when counsel relies on 49A, and when there's discussions in the – in argument about what evidence is properly considered by the jury for the purpose of damages and what evidence would properly be considered for the purpose of rescission, and defense counsel saying, don't consider it, don't let the jury see that evidence because that's for Your Honor to consider in the context of rescission, then under those circumstances, I think it was horribly unfair and error for the Court to recharacterize this verdict as one of the general. And if you don't recharacterize it, then anything not submitted to the jury is left for the Court for determination. Now, it's a little bit of a harmless error because the Court ultimately determined that he could make a determination regarding the rescission damages, and he did so on the basis of the Shoffer's decision and his determination that this was restitutionary and therefore did not entitle the defendants to a jury trial. But under either analysis, Your Honors, I believe that that is a red herring. It does not impact this verdict. Counsel's interesting argument that the Court erred by not accepting evidence, in fact, it was the defendants who insisted that the Court not take any more evidence in the rescission and demanded, in fact, that the Court not reopen the evidence. But neither side in this case made a motion to reopen the evidence phase of this trial. The plaintiffs proceeded on the grounds that the rescission damages were presented to the trial court in the context of presenting all the other evidence. And so I don't think there was any error. I think if the defendants wanted to contest the evidence in support of our rescission damages, they had an opportunity to do so when it was presented during the case-in-chief. They never made an argument or never made a motion to reopen or to submit other evidence. In fact, they argued we didn't really argue against it. The Court said he wasn't going to submit additional evidence, and the defendants really insisted upon that as well. I'd like to turn now, Your Honors, to the cross-appeal and some of the issues and briefly talk about some of those items, if we could. I'd like to start with the prejudgment interest questions. There were a number of items. The Court did award prejudgment interest, finding that certain items were capable of precise determination. And the Court did not award prejudgment interest regarding the cost of erection in the building, the cost of the restaurant equipment, the building of permits and the associated fees, the opening inventory purchased by my client, the franchise fee of $30,000 and $18,749 of training expenses, all which were incurred in reliance upon the lease, all of which were lost because my clients weren't able to gain the benefit of that lease and to compete competitively. The question involves whether or not these items were readily ascertainable for the purposes of 3287. And I'd like to start with, number one, the cost of the construction, which is $1,239.30. And the Court determined that he couldn't award that it wasn't certain because it wasn't certain until he determined that was what it was. And, in fact, the Court didn't really determine that was what it was. He took the number right off of the invoice given to my clients by their contractor. And, in fact, we've cited to that invoice, and it takes the precise number utilized by the Court in awarding that. And that number is also reflected on another document, which is a summary of expenses prepared by the bookkeeper, which is also in evidence. Now, defendants argue that the bookkeeper, for instance, didn't testify to a specific foundation of some of these items. Correct. But this is a tension between when the judge gets all the counsel in the room and says, what can we stipulate to avoid a lengthy trial? And we did. And we – and there's a whole host of joint trial exhibits. And these documents were admitted without objection. They are fully authenticated as the business records of my clients. And they're not introduced in a vacuum. There was testimony from Mr. Wallace, our expert accountant, who reviewed all of this information as to where that money went and how much money was spent on various items in his analysis. Marvin Rich testified to some specific invoices that were presented in that group and also testified generally to what was spent. There were also evidence from the money store loan, which was obtained, the $2 million loan, and there were estimates contained within that document regarding the cost. Lynn Myers testified that all of the bills of the company had, in fact, been paid. So this is a matter – this is not something that had to be determined. The number existed on the invoice at the time we started. The number existed on the invoice in discovery. And the numbers existed on the invoice even before that. In fact, one of the documents was created in 2001. So this is a – this is perhaps the clearest example of something that was readily ascertainable. Things that are determined not to be readily ascertainable, pain and suffering, the amount of prospective lost profits. These are things that there can be dispute over, these things that there's not a specific number. But when you spend money to build something, you can determine how much that is. It's how much you spent. Defendants argue really at cross purposes. On the one hand, they argue that you have to – he's only allowed to award the value of the improvements. And then they argue, on the other hand, that we didn't show that we actually paid it. Well, that seems to be somewhat inconsistent. Is it the value or is it what you paid? In this case, we provided evidence that what we paid was, in fact, relevant to the value. This rescission occurred a year after the opening of the restaurant. This is not a situation where the client occupied a building for 5 or 10 years and the value might be significantly different. And more importantly, there is absolutely no evidence contesting the cost and expenses or the value of the time. These were post hoc arguments made after the fact by the defendants. I would just take a look at each of the other items that we have identified which we believe were reasonably ascertained. Again, the cost of what they spent on that equipment was known. It was reflected in an invoice. And therefore, under 3287, the Court should have awarded prejudgment interest on those amount. This is a 10-year-old case, Your Honor. This is not an insignificant issue, given the length of time that my client has been litigating this and has been out of pocket for his investment in that store. The accrued but unpaid interest. Well, people incur obligations all the time that they can't pay. That doesn't make it any more of an obligation. And in this case, the forbearance agreement set forth it was done for mitigation purposes. Their loans were cross-collateralized and they entered into an agreement with the bank that said we'll continue to make the rental payments on this so long as you don't call our loan and we're not going to make the loan payments pending the resolution of this lawsuit. And that was done for pure mitigation purposes so that he wouldn't call a cross-collateralized loan and all of his business go into default. Defendants find other significance to that. The Court, unfortunately, made a huge error in this part. He ruled that that was somehow precluded because he said plaintiffs somehow refused to disclose the forbearance agreement. And what he was doing there is he was seizing upon, frankly, a misrepresentation of the record by the defendants. There is no basis for that conclusion anywhere in the record. The forbearance agreement is listed in the pretrial conference statement. It was one of the exhibits introduced during the trial. What happened was, is after the verdict was in and after we had made the election to do rescission, the defendants made a motion to reopen for discovery, claiming that my client had renegotiated the forbearance agreement or their loans and this was somehow significant. In response, I told the Court we're not seeking any further damages from that which was introduced during the case. And on that basis, the Court denied the motion. There was no failure to disclose. There was no basis whatsoever for the Court's conclusion that the forbearance agreement in any way impacted the accrued but unpaid interest. In fact, if you read it, you'll see that that interest was a continued obligation of my client's and that was, in fact, identified to the Court during that motion to reopen discovery. So it was just an error and I don't blame him. It was a long, long case and a lot of time elapsed between some of these rulings, Your Honor. He also, and this is a big concern, provided an offset for rental, about $430,000. And in rescission, the law does allow a court in adjusting the equities to offset for the reasonable value of the benefit obtained during the course. But it is premised upon that notion that there's some benefit. The classic example is if you rent an apartment without heat and you live there for three weeks, you've had some benefit. You've lived, you've slept. You might have been cold, but you slept. And it may not be worth what a hot apartment might be, but it's probably worth something. And under that circumstance, they do apply that. But in a commercial context, the riches did not build a restaurant on the defendant's property for the purpose of losing money. They didn't build it with the idea that they would not be able to recoup their investment. In fact, the jury found that they lost $1.5 million in lost profits. There's no benefit to the riches under that scenario. And in that adjustment was designed so that there would not be an unjust enrichment to my clients and that the defendants would get, you know, some recompense for the benefit to my client. It is not paying them for something else. And since there was absolutely zero benefit to my client, it was error for the court to award that offset. Similarly, he failed to award the paid interest of $186. He awarded a partial amount of that, but he didn't award it all. The purpose of rescission and these restitutionary damages are to bring the parties to the extent feasible and possible back to the original positions. And in this case, the evidence is, is my client put in over $3.5 million in this failed restaurant. The court's award does not come close to approximating that amount, and it's leaving my client in the whole in-before interest by over $1 million. And these items that he either accredited or failed to award are, in fact, expenses which we established were incurred by the plaintiffs in reliance on this lease, which was ultimately rescinded. And even though I do have more time, Your Honors, unless you have questions, I will submit it on the briefs. I think we handled most of the items well in the briefs. I have a quick question.  It's a factual clarification. How did the district court determine when Flagship stopped making interest payments to its lender in June 2000? It's provided for in the forbearance agreement, and it was testified to by Rob Wallace as well, our expert. Thank you. But it's provided for. There's a suspension of that, and there's a date on the forbearance agreement. Thank you. Thank you, Your Honors. Mr. Colvin. Nothing further. Okay. Thank you. We thank both counsel for the argument in a very complicated case. With that, the court has concluded its calendar for this morning. We stand in recess.
judges: Wood, Tashima, Bybee